DONNA K. A. DiCocco, Respondent, v CAPITAL AREA COMMU-
NITY HEALTH PLAN, INC., Appellant.

Third Department, July 19, 1990

120

APPEARANCES OF COUNSEL

*Hinman, Straub, Pigors & Manning, P. C. (Bartley J. Costello, III,* of counsel), for appellant.

*Parisi, DeLorenzo, Gordon, Pasquariello & Weiskopf, P. C. (Thomas E. DeLorenzo* of counsel), for respondent.

**OPINION OF THE COURT**

MERCURE, J.

Defendant, a not-for-profit health maintenance organization, employed plaintiff as a licensed practical nurse (hereinafter LPN) from April 1982 until August 1984. Alleging a wrongful termination of her employment, plaintiff brought this action claiming damages as a result of defendant's breach of an implied employment contract.[1] After defendant unsuccessfully moved for summary judgment dismissing the complaint,[2] the action came on to be tried and a jury rendered a verdict in favor of plaintiff, awarding damages of $245,091 for past and future lost wages and fringe benefits. Defendant appeals.

We begin our analysis by briefly reviewing the operative facts underlying the decision of the Court of Appeals in *Weiner v McGraw-Hill, Inc.* (57 NY2d 458, 460-461). There, the plaintiff, employed by Prentice-Hall for some four years, was approached by McGraw-Hill with an offer of employment. As part of the recruitment effort, McGraw-Hill assured plaintiff that it was company policy not to terminate employees without "just cause" and that employment with McGraw-Hill would bring him the advantage of job security. The plaintiff thereafter signed and submitted his written application for employment on a printed form prepared by McGraw-Hill

---

1. An additional cause of action alleging an unlawful discriminatory practice under Executive Law § 296 was previously dismissed by this court (135 AD2d 308).

2. Supreme Court's order denying defendant's motion for summary judgment dismissing the implied contract cause of action was affirmed by this court (135 AD2d 308).

which stated that the plaintiff's employment would be subject to the provisions of McGraw-Hill's "handbook on personnel policies and procedures", which, as relevant, provided that "[t]he company will resort to dismissal for just and sufficient cause only, and only after all practical steps toward rehabilitation or salvage of the employee have been taken and failed" *(supra,* at 460). These representations were important to the plaintiff who, in leaving Prentice-Hall, forfeited all of his accrued fringe benefits and a salary increase which had been proffered to induce him to remain. The plaintiff was discharged after eight years of employment with McGraw-Hill. In holding that the complaint stated a cause of action, a majority of the court found that the language of the handbook, coupled with the reference to the handbook in the employment application, amounted to an express agreement limiting the employer's otherwise unfettered right to terminate its employees and stressed the fact that McGraw-Hill had recruited and induced the plaintiff to leave his prior employment with assurances of job security and that the plaintiff had suffered a forfeiture in accepting the employment *(see, supra,* at 465; *see also, Sabetay v Sterling Drug,* 69 NY2d 329, 333-334).

To be contrasted are the facts adduced at the trial of this action. Plaintiff was licensed as an LPN in January 1979 and, during the first three years of her professional career, worked sporadically for three different nursing homes and two private-duty nursing registries, generally on the night or evening shifts. During 1981, plaintiff attended barber school for six months on a full-time basis and served an additional one-month apprenticeship in barbering before resuming her nursing career. In April 1982, at the suggestion of a friend, plaintiff sent her resumé to defendant and was interviewed and subsequently hired, first on a per diem basis and then, on June 10, 1982, as a full-time employee. Plaintiff completed a 90-day probationary period on September 10, 1982 and at that time was furnished with a copy of defendant's personnel handbook which, she asserts, expressly limited defendant's right to discharge her for other than good cause. It was plaintiff's testimony that during the probationary period she had an opportunity for employment with a nursing home, Baptist Retirement Center, on the 3:00 P.M. to 11:00 P.M. shift, and was requested to remain with Personal Health Care, a private-duty registry, but decided to stay with defendant because of the benefits which defendant offered, including

favorable working hours, health insurance and job security. As noted, plaintiff was discharged from her employment with defendant in August 1984.

■ In order to make out a prima facie case under *Weiner v McGraw-Hill, Inc.* (57 NY2d 458, *supra)* and *Sabetay v Sterling Drug* (69 NY2d 329, *supra),* a plaintiff must present competent proof of (1) an express agreement or express limitation of the employer's common-law right of discharge, and (2) detrimental reliance upon the agreement or limitation. Assuming, for the sake of argument only, that plaintiff met her burden of proving the existence of an express agreement *(see, supra,* at 336), it is, nonetheless, our view that the complaint should have been dismissed as a matter of law due to plaintiff's failure to establish prima facie the essential element of detrimental reliance. Given this failure, the purported contract is unenforceable for lack of consideration *(see, Sabetay v Sterling Drug, supra,* at 335; *Weiner v McGraw-Hill, Inc., supra,* at 464-465; *Smith v New York State Elec. & Gas Corp.,* 155 AD2d 850; *Rizzo v International Bhd. of Teamsters, Local 237,* 109 AD2d 639, 641-642).

The record demonstrates that plaintiff's employment was not solicited by defendant and she suffered no forfeiture as a result of accepting the employment with defendant. Plaintiff completed a BOCES practical nursing program and obtained a high school equivalency diploma in 1978 and, following a decidedly checkered three-year employment history, sought a position with defendant because she had heard from a friend that the hours, working conditions, benefits and "job security" were good. Plaintiff testified that in connection with her "acceptance" of this position, she stopped taking temporary assignments from Personal Health Care, her prior "employer", a private-duty registry, but there is no indication that she had accrued any seniority rights or pension, insurance or other benefits from this employment. The only remaining evidence of claimed detrimental reliance was plaintiff's testimony that she did not follow up on a suggestion that she complete an application for full-time employment at Baptist Retirement Center, a nursing home where she had previously been assigned from time to time doing fill-in work. However, we have nothing more than plaintiff's self-serving hearsay testimony to support the conclusion that she would have been offered a position with this employer had she applied. Moreover, even assuming, arguendo, that an offer would have then

been extended, the record is devoid of evidence of any forfeiture that plaintiff suffered by not accepting it. It is also worth noting that plaintiff had not received defendant's personnel handbook at the time she spurned these so-called offers and that following plaintiff's discharge and up to the time of trial, employment was available to her at both Personal Health Care and Baptist Retirement Center. We conclude, in these circumstances, that plaintiff has failed to meet her burden of proving that she forsook other job prospects to her detriment in reliance upon any agreement with defendant. Plaintiff's failure to produce competent proof of detrimental reliance, within the requirements of *Weiner v McGraw-Hill, Inc. (supra)*, required that Supreme Court grant defendant's motion to set aside the verdict.

■ Nor does our prior affirmance of Supreme Court's denial of defendant's motion for summary judgment dismissing the complaint (135 AD2d 308) require a contrary result. It is fundamental that summary judgment will be denied where there is any doubt as to the existence of an issue or where the issue is even arguable, the key to the procedure being "issue-finding" rather than "issue-determination" *(see, Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 404; *Dunleavy v First Am. Tit. Ins. Co.,* 117 AD2d 952, 953). In an appropriate case, even inadmissible evidence may defeat a motion for summary judgment *(see, Zuckerman v City of New York,* 49 NY2d 557, 562). Of greatest significance here, the denial of summary judgment, determining nothing more than the existence of factual issues requiring a trial, is given no preclusive effect *(see,* 6 Carmody-Wait 2d, NY Prac § 39:39, at 492) and, for that reason, did not prevent a directed verdict in favor of defendant after presentation of all of the evidence *(see, Smith v Hooker Chem. & Plastics Corp.,* 125 AD2d 944, 945, *affd* 70 NY2d 994; *Caruso v Hall,* 101 AD2d 967, 968-969, *affd* 64 NY2d 843).

Although defendant advances other contentions that have merit, they need not be addressed.

MAHONEY, P. J., MIKOLL, YESAWICH, JR., and LEVINE, JJ., concur.

Judgment and amended judgment reversed, on the law, without costs, and complaint dismissed.